# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| JASMINE BOTHWELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| KAMTEK, INC., and | ) |
| PERSONNEL STAFFING, INC., | ) |
| | |
| Defendants. | |

## COMPLAINT

## I. JURISDICTION

1. This is a suit for relief from gender discrimination and retaliation instituted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* ("Title VII"). The jurisdiction of this Court is based on 28 U.S.C. §§1331 and 1343(4).

2. Plaintiff Jasmine Bothwell timely filed her charges of discrimination against defendants Kamtek, Inc. and Personnel Staffing, Inc. with the Equal Employment Opportunity Commission within 180 days after the last act of discriminatory treatment. Plaintiff has further filed this complaint within 90 days after receipt of her right-to-sue notices.

## II. PARTIES

3. Plaintiff Jasmine Bothwell ("Plaintiff") is a United States citizen over the age of nineteen and a resident of Jefferson County, Alabama.

4. Defendant Kamtek, Inc. ("Kamtek") is a Canadian corporation and was an "employer" under Title VII during the events alleged in this case.

5. Defendant Personnel Staffing, Inc. ("PSI") is a corporation based in Gadsden, Alabama and was an "employer" under Title VII during the events alleged in this case. Kamtek and PSI are collectively referred to herein as "Defendants."

## III. FACTS

**Background**

6. Plaintiff is female.

7. PSI is a staffing company.

8. During the events of this case, PSI had a contract with Kamtek to provide Kamtek with workers at its production facility in Birmingham, Alabama.

9. In March of 2017, Plaintiff was hired by PSI and assigned to work at Kamtek's facility.

10. Leigh Ann Massengale, PSI's representative who placed Plaintiff, told Plaintiff that she could potentially be hired directly by Kamtek if she did well enough.

11. On or about March 17, 2017, Plaintiff began working at Kamtek as an assembly operator.

12. As such, Plaintiff worked to manufacture Kamtek's products.

13. PSI had employees onsite at Kamtek providing administrative, payroll, and human resources functions for its employees working there.

14. Kamtek exclusively directed the work that Plaintiff performed for Kamtek.

15. Kamtek exclusively supervised Plaintiff's work.

16. Kamtek exclusively directed the hours that Plaintiff worked.

17. Kamtek exclusively provided Plaintiff the materials and equipment for the performance of her duties.

18. According to PSI, it "monitored" the work of Plaintiff and other PSI employees working at Kemtek through communication with Kamtek supervisors.

19. Kamtek paid PSI for Plaintiff's services based on the hours she worked.

20. PSI set Plaintiff's rate of pay and paid her for her work performed at Kamtek.

21. Plaintiff was paid by the hour, rather than based on the cost of performing a particular job.

22. Kamtek worked Plaintiff for an indefinite (as opposed to finite) period of time.

23. The work performed by Plaintiff for Kamtek was an integral part of the regular operations of Kamtek.

24. Given the number of hours Kamtek required Plaintiff to work, she was economically dependant upon Kamtek during the period she worked for Kamtek.

25. Kamtek imposed on Plaintiff its attendance and other personnel policies, through agreement with PSI.

26. Defendants each retained the right, consistent with applicable law, to terminate the work of Plaintiff and other people working at Kamtek through PSI.

27. During Plaintiff's work at Kamtek, several Kamtek supervisors told her that she could be hired directly by Kamtek after six months.

28. Further, toward the end of Plaintiff's work there, her Kamtek supervisor, Joshua Smith, told her that he was trying to get her enrolled in a direct hire class in September of 2017.

**Facts Central To The Legal Claims**

29. In mid to latter July of 2017, Plaintiff was at a trampoline park with her daughter and a friend.

30. The Kamtek plant was closed for a scheduled shutdown at the time.

31. Plaintiff saw Darius Thompson, whom she knew only as being a team leader at Kamtek.

32. Thompson, who is male, was not Plaintiff's team leader.

33. Plaintiff and Thompson did not speak to one another at the trampoline park.

34. In late July or early August, after the plant resumed operations, Plaintiff noticed Thompson began walking by her machine when she was working.

35. Thompson would stare at Plaintiff when he walked by.

36. Plaintiff did not know of Thompson's work area being near her machine, and she had never seen him walk by her machine before.

37. After several days of Thompson walking by and staring at Plaintiff, one day he stopped at her machine.

38. This was in or about the first week of August, 2017.

39. Thompson told Plaintiff that he had seen her at the trampoline park.

40. Plaintiff said yes, she had seen him there as well.

41. Thompson said that Plaintiff did not wear tight clothes at work and that he had thought she was gay.

42. Plaintiff replied that she was.

43. Thompson asked Plaintiff who the male was that she had been at the park with.

44. Plaintiff told him that it was a friend of hers there with her and her daughter.

45. Later that day, Thompson approached Plaintiff again and asked her if he had "a chance" with her.

46. Plaintiff said that she was gay.

47. Thompson said, "So, my tongue don't look like it could make you feel good?"

48. Plaintiff had seen a woman with Thompson at the park and asked him if he were married.

49. Thompson said that he was.

50. Plaintiff asked Thompson why he was getting in her business if he was married.

51. Thompson said that he did not know.

52. Plaintiff told Thompson she thought he should leave her station.

53. After that, Thompson continued walking by Plaintiff's machine staring at her.

54. About two-three days after their previous conversation, Thompson again stopped at Plaintiff's machine.

55. Thompson told Plaintiff that she needed to watch who her daughter hung around with because she did not want her daughter to be like Plaintiff when she got older.

56. Plaintiff told Thompson that her daughter did not have to be like her.

57. Thompson said that he could be Plaintiff's daughter's "father figure" and that he and Plaintiff could be "friends with benefits."

58. Plaintiff told Thompson no and asked him to leave her alone.

59. Later that day, Woodrow (last name unknown), another team lead but not Plaintiff's team lead, told Plaintiff that Thompson had told him about her conversation with Thompson earlier that day.

60. Plaintiff told Woodrow that she had told Thompson before to leave her alone and that she did not want him around her.

61. Another co-worker told Plaintiff that Thompson had gotten in trouble for sexual harassment before.

62. After Plaintiff's last conversation with Thompson set forth above, Thompson continued walking by Plaintiff's machine, but now he would glare at her with a hostile expression while doing so.

63. On or about August 14, 2017, Thompson and Tyra (last name unknown), another team lead but not Plaintiff's team lead, walked by Plaintiff.

64. Thompson stopped and glared at Plaintiff.

65. Plaintiff asked Thompson what was going on.

66. Thompson began growling at Plaintiff and suddenly lunged toward her.

67. Tyra grabbed Thompson and pulled him back.

68. This incident frightened Plaintiff so badly that she went to Kamtek Human Resources.

69. Plaintiff spoke to Charman Meador, Kamtek's Human Resources Manager at the plant.

70. Plaintiff told Meador that she could not work the floor that day because she thought Thompson was going to attack her.

71. Plaintiff told Meador of the events with Thompson leading up to that day.

72. Meador told Plaintiff that she (Plaintiff) was not a Kamtek employee and to go to PSI about it.

73. Plaintiff went to PSI's trailer at the Kamtek plant and spoke to Roger Kirby, an on-site representative for PSI there.

74. Plaintiff told Kirby that she needed to make a complaint about sexual harassment and a possible attack but that she did not feel comfortable telling him about it and wanted to talk about it to Antionette Glassco, a female PSI on-site representative there.

75. Glassco worked a later shift and was not yet at work.

76. Kirby told Plaintiff to come back at her next break at 3:30 p.m., when Glassco would be there.

77. Plaintiff did so.

78. When Plaintiff returned, Kirby was in PSI's trailer but Glassco was not.

79. After Plaintiff entered the trailer, the office phone there rang.

80. Kirby answered it and said, "She's here right now."

81. Kirby hung up and Plaintiff told him that she had been to Kamtek Human Resources, that they had sent her to PSI, and that she needed to make a complaint of sexual harassment against Thompson that had been ongoing.

82. At that point, Meador came into the trailer.

83. Meador said that she did not believe a word Plaintiff said and that she was going to do her own investigation.

84. Meador told Plaintiff that she wanted her badge and for her to leave the premises.

85. Plaintiff gave Meador her badge.

86. Meador then left the trailer.

87. Plaintiff left Kamtek as directed and called Massengale.

88. Plaintiff told Massengale that she had tried to make a complaint of sexual harassment and attack and was told to turn in her badge and leave Kamtek's premises.

89. Plaintiff asked Massengale if they could meet.

90. Massengale told Plaintiff to come to PSI's Birmingham office at 1:00 p.m. that day.

91. Plaintiff did so, at which time Massengale told Plaintiff that she needed to do an exit interview.

92. Plaintiff asked why she was doing an exit interview if Kamtek was investigating and she had not been terminated.

93. Massengale said that it was their procedure.

94. Plaintiff asked Massengale about other assignments.

95. Massengale told Plaintiff that PSI only did placements at Kamtek.

96. On or about August 17, 2017, Plaintiff had not heard anything about the investigation.

97. So, Plaintiff called the PSI trailer at Kamtek.

98. Plaintiff spoke with Glassco.

99. Glassco said that Kirby had left for the day but that he had sent her an email stating that Plaintiff was terminated.

100. Glassco said the email did not go into details.

101. Plaintiff thereafter called the PSI availability line for three weeks to report that she was available to work.

102. Plaintiff never got a call back.

103. Massengale's statement that PSI placed workers only at Kamtek was false.

104. PSI had open positions for which Plaintiff was qualified, but it did not assign her to any.

## IV. CAUSES OF ACTION

### COUNT I

### TITLE VII- SEXUAL HARASSMENT

105. Paragraphs 1-104 above are incorporated by reference.

106. Based on the facts set forth above, Defendants were joint employers of Plaintiff with respect to her work at Kamtek, pursuant to applicable Title VII law.

107. Defendants violated Plaintiff's rights under Title VII by subjecting her to sexual harassment that constituted a hostile work environment and/or culminated in an adverse job action.

108. As a result of the above described discriminatory acts, Plaintiff has suffered damages including emotional distress and mental anguish.

**WHEREFORE, these premises considered,** Plaintiff respectfully requests the following:

(i)  That the Court issue an Order declaring that Defendants' act as described herein violated Title VII;

(ii) That the Court enter an Order requiring Defendants to make Plaintiff whole by ordering Defendants to pay compensatory and punitive damages as a jury may assess;

(iii) That the Court grant Plaintiff a permanent injunction enjoining Defendants, and their agents, employees, successors, and those acting in concert with Defendants from continuing to violate Title VII;

(iv) That the Court award Plaintiff prejudgment and post-judgment interest at the highest rates allowed by law and an amount to compensate her for any adverse tax consequences as a result of a judgment in her favor; and

(v)  That the Court award such other legal and equitable relief as justice requires, including, but not limited to, an award of costs, attorney's fees, expert witness fees, and expenses.

## COUNT II

## TITLE VII- RETALIATORY DISCHARGE

109. Paragraphs 1-104 and 106 above are incorporated by reference.

110. Defendants violated Plaintiff's rights under Title VII by terminating her employment with Defendants at Kamtek in retaliation for her complaints about what she reasonably believed to been unlawful sexual harassment there.

111. As a result of the above described discriminatory acts, Plaintiff has been made to suffer lost wages and benefits, emotional distress, and mental anguish.

**WHEREFORE, these premises considered,** Plaintiff respectfully requests the following:

(i) That the Court issue an Order declaring that Defendants' act as described herein violated Title VII;

(ii) That the Court enter an Order requiring Defendants to make Plaintiff whole by reinstating her and placing her in the position she would have occupied in the absence of Defendants' violation of Plaintiff's rights (or, alternatively, providing front-pay), providing back-pay and restoration of lost benefits and perquisites of employment with interest, and ordering Defendants to pay compensatory and punitive damages as a jury may assess;

(iii)   That the Court grant Plaintiff a permanent injunction enjoining Defendants, and their agents, employees, successors, and those acting in concert with Defendants from continuing to violate Title VII;

(iv) That the Court award Plaintiff prejudgment and post-judgment interest at the highest rates allowed by law and an amount to compensate her for any adverse tax consequences as a result of a judgment in her favor; and

(v)   That the Court award such other legal and equitable relief as justice requires, including, but not limited to, an award of costs, attorney's fees, expert witness fees, and expenses.

## COUNT III

## TITLE VII- RETALIATORY REFUSAL TO PLACE (PSI ONLY)

112.   Paragraphs 1-104 above are incorporated by reference.

113.   After Plaintiff's termination from Kamtek, PSI violated Plaintiff's rights under Title VII by refusing to place her in other jobs because of her opposition to what she reasonably believed to have been unlawful sexual harassment at Kamtek.

114.   As a result of the above described discriminatory act, Plaintiff has been made to suffer lost wages and benefits, emotional distress, and mental anguish.

**WHEREFORE, these premises considered,** Plaintiff respectfully requests the following:

(i) That the Court issue an Order declaring that PSI's acts as described herein violated Title VII;

(ii) That the Court enter an Order requiring PSI to make Plaintiff whole by placing her in the position she would have occupied in the absence of PSI's violation of Plaintiff's rights (or, alternatively, providing front-pay), providing back-pay and restoration of lost benefits and perquisites of employment with interest, and ordering PSI to pay compensatory and punitive damages as a jury may assess;

(iii) That the Court grant Plaintiff a permanent injunction enjoining PSI, and its agents, employees, successors, and those acting in concert with PSI from continuing to violate Title VII;

(iv) That the Court award Plaintiff prejudgment and post-judgment interest at the highest rates allowed by law and an amount to compensate her for any adverse tax consequences as a result of a judgment in her favor; and

(v) That the Court award such other legal and equitable relief as justice requires, including, but not limited to, an award of costs, attorney's fees, expert witness fees, and expenses.

                        Respectfully submitted,

                        s/ Adam M. Porter
                        Adam M. Porter
                        Attorney for Plaintiff
                        Adam M. Porter, LLC
                        2301 Morris Avenue, Suite 102
                        Birmingham, Alabama 35203
                        Phone: (205) 322-8999
                        Facsimile: (205) 402-4619
                        Email: adam@adamporterlaw.com

Plaintiff requests trial by struck jury.

                        s/ Adam M. Porter
                        Attorney for Plaintiff

Defendants' Addresses:
Kamtek, Inc.
c/o Corporation Service Company, Inc., Registered Agent
641 S. Lawrence St.
Montgomery, AL 36104

Personnel Staffing, Inc.
c/o Mike Purkey, Registered Agent
611-A Walnut St.
Gadsden, AL 35901